IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-cv-43

| | | |
|---|---|---|
| MILTON F. BRICKHOUSE, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | **(VERIFIED)** |
| | ) | |
| THE TOWN OF AHOSKIE and Officer | ) | |
| JESSIE L. MIZELLE in his official and | ) | **JURY TRIAL DEMANDED** |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

NOW COMES the Plaintiff Milton F. Brickhouse, Jr. ("Plaintiff" or "Brickhouse"), by and through counsel, complaining of the Defendants, and alleges and states that:

<u>**NATURE OF THE CASE**</u>

1.      In this action, Plaintiff seeks compensatory and punitive damages and declaratory, injunctive and other relief arising under 42 U.S.C. §§ 1983 and 1988, and 22 U.S.C. §§ 2201-02 and 28 U.S.C. § 1343, the Fourth and Fourteenth Amendments to the United States Constitution, and North Carolina's Constitution and laws to redress Defendants' unlawful and unconstitutional conduct when Defendant Jessie L. Mizelle seized Plaintiff Milton Brickhouse without reasonable suspicion or probable cause on September 2, 2011.  The Defendants' actions as alleged herein, constituted, *inter alia*, unlawful seizure and unlawful initiation of criminal proceedings, depriving Plaintiff's rights protected under the Fourth and Fourteenth Amendments to the United States Constitution and North Carolina's Constitution and in violation of state law.  Plaintiff should be awarded compensatory and punitive damages, along with declaratory, injunctive and other relief, for these violations of his federally and state protected constitutional rights and of state law.

1

<u>**JURISDICTION AND VENUE**</u>

2.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution.  This case also arises under the provisions of 42 U.S.C. §§ 1983 and 1988.

3.     Original jurisdiction over this case is conferred upon this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and the United States Constitution because this case arises under the Constitution and laws of the United States.  Original jurisdiction over this case is also conferred upon this Court pursuant to 28 U.S.C. § 1343(a) because this action is to redress the deprivation by the Defendants, under color of state law, of Plaintiff's rights, privileges, and immunities secured by the United States Constitution and laws of the United States.

4.     This Court has jurisdiction over Plaintiff's North Carolina state law claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with his federal claims.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff and one or more Defendants reside in this District, and the claims asserted herein arose in this District.

<u>**PARTIES**</u>

6.     Plaintiff is, and at all relevant times to this action, was a resident of Hertford County, North Carolina.

7.     Upon information and belief, Defendant Jessie L. Mizelle (hereinafter "Mizelle"), is, and at all times relevant to this action, was mentally competent, more than eighteen years of age, not in military service, *sui juris*, a citizen and resident of North Carolina, and employed as a law enforcement officer for the Town of Ahoskie.

8.     Mizelle is being sued in his official and individual capacity as a police officer for the Town of Ahoskie.  Upon information and belief, during all relevant times, Mizelle acted under

2

color of state law.

9.      Upon information and belief, Defendant Town of Ahoskie (hereinafter "Town" or "Ahoskie") is a municipal corporation properly chartered, organized, and existing under the laws and Constitution of North Carolina, and is or was the employer of Mizelle, who, at all times relevant to this Complaint, was appointed as a law enforcement officer of the Town's Police Department pursuant to N.C. Gen. Stat. § 160A-28.

10.     Hertford County, North Carolina is where

   a) a substantial part of the events giving rise to the Plaintiff's claims occurred;

   b) the causes of action in this case arose;

   c) where Plaintiff resided and resides; and

   d) where one or more of the Defendants reside.

## WAIVERS OF IMMUNITY

11.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

12.     Upon information and belief, Ahoskie and any and all of its agents, employees, and officers waived any sovereign or governmental immunity defenses that could have been raised as to Plaintiff's claims in that Ahoskie had in force at all relevant times,

   a) pursuant to N.C. Gen. Stat. § 160A-485,

      i) plans of insurance entered into, and/or

      ii) City Council resolutions that waived immunity and established a funded reserve; and/or

   b) pursuant to N.C. Gen. Stat. § 58-23, participated in local government risk pool or pools, said waiver or waivers of sovereign and/or governmental immunity being to the extent of

coverage of said plans, resolutions, pools, and/or reserves.

13.     In the alternative, if Ahoskie has not waived sovereign or governmental immunity or if Plaintiff does not have an adequate remedy at state law, then Plaintiff asserts direct claims for violations of Plaintiff's rights protected by the North Carolina Constitution.

<b><span style="font-variant: small-caps">Factual Allegations</span></b>

14.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

15.     On the evening of September 2, 2011, at approximately 10:10 p.m., Plaintiff pulled out of a shopping center in Ahoskie onto Memorial Drive in his 2003 Ford pickup truck.

16.     The headlights on Plaintiff's vehicle were turned on before Plaintiff started driving.

17.     Plaintiff was properly licensed to drive in North Carolina, held a valid Commercial Driver's License ("CDL"), and was employed as a commercial truck driver.

18.     Plaintiff's vehicle was properly registered and insured.

19.     Plaintiff operated his vehicle in a manner that any reasonable officer who observed its operation would know fully complied with the traffic laws of North Carolina.

20.     Plaintiff's vehicle had no registration, license, safety equipment, or operating problems that would lead any reasonable officer to believe that it did not fully comply with the traffic and safety laws of North Carolina.

21.     Shortly after Plaintiff pulled onto Memorial Drive, Officer Mizelle activated his emergency lights and stopped Plaintiff's vehicle.

22.     Plaintiff complied with Mizelle's demand and provided his CDL and registration.

23.     Plaintiff asked Officer Mizelle why he stopped him.

24.     Officer Mizelle responded "I am going to say that your lights were out.".

25.     Officer Mizelle told Plaintiff to exit his vehicle, and Plaintiff complied.

26.     Plaintiff denied that his headlights were off and pointed out that he and Officer Mizelle were standing in front of his vehicle and that its headlights were on.

27.     Officer Mizelle responded by saying words to the effect that he was going to say that Plaintiff's lights were off anyway.

28.     Plaintiff told Mizelle that he worked as a commercial truck driver delivering gas.

29.     Upon information and belief, any reasonable officer who observed what Officer Mizelle observed would know that the headlights on Plaintiff's truck were on.

30.     Upon information and belief, Officer Mizelle knew that the headlights on Plaintiff's truck were on.

31.     Upon information and belief, Officer Mizelle knew that he had no reasonable suspicion adequate to support his seizure of Plaintiff.

32.     The light switch on Plaintiff's truck was broken so Plaintiff had to employ a procedure to turn the headlights on and off that involved the use of special pliers, which Plaintiff kept in his truck for that purpose.  Plaintiff was not able to turn the headlights on or off while driving.

33.     The sole basis for Mizelle's stop of Plaintiff's vehicle was Mizelle's claim that Plaintiff's headlights were not on.

34.     Mizelle told Plaintiff that he was charging him with driving while impaired ("DWI") and that Plaintiff would lose his regular driving privilege for 30 days and his CDL for one year just for being charged with DWI and even before going to court.

35.     Mizelle arrested Plaintiff and initiated criminal proceedings against Plaintiff for driving while impaired in violation of N.C. Gen. Stat. 10-138.1.  [Hertford County File No. 11CR 51465]

36.     Upon information and belief, Mizelle initiated and pursued criminal proceedings against plaintiff by arresting him without a warrant or probable cause and swearing alleged facts that caused a Magistrate's Order to be issued, criminal proceedings to be initiated, and/or testified against the plaintiff in his criminal prosecution.

37.     Upon information and belief, Mizelle made statements and/or omissions that created falsehoods in judicial proceedings to determine reasonable suspicion and/or lawful probable cause, and said statements and/or omissions were material and/or necessary to any finding of probable cause.

38.     Mizelle's seizure of Plaintiff was unconstitutional and illegal because it was based on Mizelle's claim that Plaintiff drove with his headlights off, a claim that Mizelle knew was false at the time he seized Plaintiff and at all subsequent times, including the times that Mizelle swore facts when he obtained, initiated or pursued the criminal prosecution of Plaintiff.

39.     The facts and circumstances within Mizelle's knowledge at the time he seized Plaintiff were not sufficient to warrant a reasonable officer to belief that there was reasonable suspicion adequate to lawfully seize Plaintiff.

40.     The facts and circumstances within Mizelle's knowledge at the time he initiated and continued to testify in support of said criminal proceedings against plaintiff were not sufficient to warrant a reasonable law enforcement officer to believe that Plaintiff's seizure was lawful or constitutional.

41.     Upon information and belief, after Plaintiff's arrest, responding officers and a tow truck operator could not determine how to turn off the headlights on Plaintiff's vehicle at the scene, but the lights were eventually turned off by a mechanic/tow truck operator using tools at his garage after the vehicle was driven away.

42.     On September 11, 2012, after a hearing in which Officer Mizelle testified, the district court granted Brickhouse's Motion to Suppress Evidence due to lack of reasonable suspicion to support the traffic stop and the criminal proceedings terminated in Brickhouse's favor.

43.     Plaintiff's driver's license was civilly revoked for 30 days due to his arrest by Mizelle for DWI pursuant to N.C. Gen. Stat. § 20-16.5.

44.     Plaintiff's CDL was revoked for one year pursuant to N.C. Gen. Stat. § 20-17.4(a)(7) due to the 30 day civil revocation of his driver's license arising from his arrest by Mizelle for DWI.

45.     Plaintiff was terminated from his job as a commercial truck driver due to the loss of his CDL because of the DWI that was unlawfully charged by Mizelle.

46.     The resultant loss of income arising from his unlawful seizure by Mizelle rendered Plaintiff financially destitute.

47.     Prior to September 2, 2011, Mizelle arrested more than one person for DWI where a magistrate determined that there was no probable cause for the arrest.

48.     Prior to September 2, 2011, charges filed by Mizelle against a person for disorderly conduct and resisting arrest were voluntarily dismissed only after that person signed a release of all potential civil claims against Mizelle and the Town of Ahoskie related to the incident.

49.     Prior to September 2, 2011, DWI charges that resulted from a traffic stop made by Mizelle were voluntarily dismissed because the "State unable to prove reason for stop and facts in case before highway patrol called."

50.     Upon information and belief, Mizelle, as a practice, stopped and continues to stop vehicles when he did not or does not have constitutionally adequate reasonable suspicion to do so.  A number of the Affidavit and Revocation Reports filed by Mizelle in support of the DWIs that he charged do not state any factual support for his traffic stop of the arrestee or state facts

that could only be determined after the traffic stop.

51.     During 2013, Mizelle charged a woman with resisting, delaying or obstructing a law enforcement officer for refusing to allow him to enter her home without a search warrant for the purpose of serving an arrest warrant upon a non-resident that he believed to be in the woman's home.  The case was voluntarily dismissed by the prosecutor because it is "not illegal to refuse to allow police to enter your home w/out warrant."  This precise issue of Fourth Amendment law was clearly established by the Fourth Circuit Court of Appeals in *Wallace v. King*, 626 F.2d 1157 (4th Cir. 1980) and shortly after by the Supreme Court in *Steagal v. United States*, 451 U.S. 204 (1981).

52.     Upon information and belief, the Basic Law Enforcement Training course offered in North Carolina instructs and instructed trainees to the effect that "absent consent or exigent circumstances, the officer must have a search warrant (to protect the privacy interests of the third party) in addition to an arrest warrant (to allow the arrest of the suspect within residence of the third party)."  There was no consent or exigent circumstances to warrant Mizelle's attempted entry of the woman's home discussed in the previous paragraph.

53.     Upon information and belief, other Ahoskie police officers, as a practice, stopped and continue to stop vehicles when they did or do not have constitutionally adequate reasonable suspicion to do so.

54.     Upon information and belief, the Town of Ahoskie knew or was recklessly indifferent to the federally protected rights of the persons who foreseeably came in contact with the Town's officers, that its police officers, including Mizelle, were regularly violated the federally protected rights of said persons.

55.     Upon information and belief, the unlawful stops by Mizelle and the Town's police are

under-reported because:

a) The Town's police are not required to maintain traffic stop statistics by state law due to the Town's population and number of officers;

b) Most of the unlawful stops do not result in criminal charges;

c) Many of those unlawfully stopped do not have the economic means to pursue any complaints or claims; and

d) Where the unlawful stops result in criminal charges, the officers' testimony regarding their purported factual basis for the stop generally cannot be effectively challenged in the criminal proceedings absent directly contradictory and irrefutable facts from independent sources or independent witness testimony, which often does not exist or is not available.

56.     Upon information and belief, the Town does not review the judicial determinations and dispositions of the criminal cases initiated by its officers to determine whether its officers violate the Fourth Amendment rights of those it comes in contact with.

57.     Upon information and belief, Ahoskie's police force, including Mizelle, on a regular basis so as to constitute a policy, custom and/or practice:

a) unlawfully stopped vehicles without reasonable suspicion or probable cause to "fish" for evidence of any general criminal activity;

b) unlawfully searched vehicles and occupants without a warrant, without probable cause, without reasonable suspicion of any wrongdoing; sometimes with coerced "consent" after an unlawful seizure;

c) unlawfully arrested citizens and initiated criminal proceedings without probable cause;

d) knowingly and intentionally or with reckless disregard made false or misleading statements of fact or omitted facts in judicial proceedings to determine reasonable

9

suspicion and/or lawful probable cause for arrest and/or search warrants, and those statements and/or omissions were material to the determination of probable cause; and

e) in some cases required those whose rights had been violated to waive any civil claims and covenant not to sue in exchange for not objecting to the dismissal of unlawful criminal charges.

58. Upon information and belief, prior to the incident complained of herein, there were complaints of similar misconduct against some of Ahoskie's law enforcement personnel, including Mizelle, of which Ahoskie was aware or should have been aware.

59. Upon information and belief, Ahoskie by policy and practice provided inadequate oversight over the operations of its police force.

60. Upon information and belief, Ahoskie was aware or should have been aware of constitutional violations by its police force, including Mizelle.

61. Upon information and belief, Ahoskie did not ensure that its officers, including Mizelle, were adequately trained, supervised, or disciplined.

62. The wrongful acts complained of herein were committed by Mizelle and Ahoskie's employees or agents within the scope of and in furtherance of its business and duties, were expressly authorized by Ahoskie, or were ratified by Ahoskie.

63. Ahoskie is liable for its employees' and agents' wrongful acts under the doctrine of Respondeat Superior.

64. Upon information and belief, Ahoskie's police force, including Mizelle, continue to violate the rights of those it comes in contact with.

65. Plaintiff lives in Hertford County and visits Ahoskie on a regular basis, and he continues to reasonably fear that he will be subjected to the unlawful practices of Ahoskie's police force

and Mizelle.

**CLAIMS FOR RELIEF**

**STATE LAW CLAIMS**

**COUNT ONE: TRESPASS BY PUBLIC OFFICIAL**
**(DEFENDANTS)**

66.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

67.     Mizelle seized plaintiff without reasonable suspicion or lawful probable cause.

68.     Mizelle intentionally caused plaintiff to be detained against his will by seizing him without reasonable suspicion, and/or arresting him without a warrant or lawful probable cause to believe that any crime had been committed by plaintiff.

69.     The detention of plaintiff was intentional.

70.     The detention was without privilege or justification.

71.     The detention was unlawful.

72.     Mizelle initiated and pursued criminal proceedings against plaintiff by seizing him without reasonable suspicion and then arresting him without a warrant or lawful probable cause and swearing alleged facts that caused a Magistrate's Order to be issued, criminal proceedings to be initiated, and/or testified against the plaintiff in his criminal prosecution.

73.     There was a lack of reasonable suspicion for the seizure or lawful probable cause for the initiation and continuation of said proceedings.

74.     The facts and circumstances within Mizelle's knowledge at the time he initiated and continued said criminal proceedings against plaintiff were not sufficient to warrant a reasonable person to believe that a crime had been committed by plaintiff.

75.     Mizelle intentionally made statements and/or omissions that created a falsehood in

11

judicial proceedings to determine reasonable suspicion or probable cause, and said statements and/or omissions were material or necessary to any finding of reasonable suspicion or probable cause.

76.     Plaintiff was never convicted of the crimes he was charged with by Mizelle at the time he initiated criminal proceedings or when he testified against him in court, nor any lesser included offenses of said crimes.

77.     These proceedings terminated in favor of plaintiff.

78.     Mizelle's conduct proximately caused injuries to plaintiff.

79.     Mizelle acted under color of his office.

80.     Mizelle invaded Plaintiff's rights through shown or imputed force.

81.     In the alternative to acting in his official capacity, Mizelle's conduct was malicious, corrupt, or outside the scope of his official authority.

## COUNT TWO: FALSE ARREST/FALSE IMPRISONMENT
### (DEFENDANTS)

82.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

83.     Mizelle intentionally caused plaintiff to be detained against his will by seizing him without reasonable suspicion and/or arresting him without a warrant or lawful probable cause to believe that any crime had been committed by plaintiff.

84.     The detention of plaintiff was intentional.

85.     The detention was without privilege or justification.

86.     The detention was unlawful.

87.     The facts and circumstances that were lawfully within Mizelle's knowledge at the time he arrested plaintiff were not sufficient to warrant a reasonable person to believe that a crime had

been committed by plaintiff.

88.     Mizelle intentionally made statements and/or omissions that created a falsehood in judicial proceedings to determine reasonable suspicion or lawful probable cause, and said statements and/or omissions were material or necessary to any finding of reasonable suspicion or lawful probable cause.

89.     Mizelle's conduct proximately caused injuries to plaintiff.

90.     In the alternative to acting in his official capacity, Mizelle's conduct was malicious, corrupt, or outside the scope of his official authority.

### COUNT THREE:  MALICIOUS PROSECUTION
### (DEFENDANTS)

91.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

92.     Mizelle initiated criminal proceedings against plaintiff by seizing him without reasonable suspicion, arresting him without a warrant or lawful probable cause and swearing alleged facts that caused a Magistrate's Order to be issued and criminal proceedings to be initiated against plaintiff.

93.     There was a lack of lawful probable cause for the initiation of said proceedings.

94.     The facts and circumstance that were lawfully within Mizelle's knowledge at the time he initiated criminal proceedings against plaintiff were not sufficient to warrant a reasonable person to believe that a crime had been committed by plaintiff.

95.     Mizele intentionally made statements and/or omissions that created a falsehood in judicial proceedings to determine reasonable suspicion or lawful probable cause, and said statements and/or omissions were material or necessary to any finding of reasonable suspicion or lawful probable cause.

13

96. Plaintiff was never convicted of the crimes he was charged with by Mizelle at the time he initiated criminal proceedings and caused plaintiff's arrest, nor any lesser included offenses of said crimes.

97. These proceedings terminated in favor of plaintiff.

98. Mizelle's conduct proximately caused injuries to plaintiff.

99. In the alternative to acting in his official capacity, Mizelle's conduct was malicious, corrupt, or outside the scope of his official authority.

### COUNT FOUR: NEGLIGENT HIRING, RETENTION, AND SUPERVISION
### (AHOSKIE)

100. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

101. Ahoskie owed a duty to the citizenry, including the Plaintiff, to ensure that its police force employees and managers, who were statutorily empowered as sworn police officers, were properly hired, trained, supervised, disciplined, and terminated when necessary.

102. Ahoskie was aware or through the exercise of reasonable care should have been aware that they hired police personnel, including Mizelle, who foreseeably would commit tortious acts against and violate the rights of the citizenry, including Plaintiff.

103. Ahoskie was aware or through the exercise of reasonable care should have been aware that they their police personnel, including Mizelle, were committing tortious acts against and violating the rights of the citizenry, including Plaintiff.

104. Ahoskie was aware or through the exercise of reasonable care should have been aware that the conduct of their police personnel, including Mizelle, clearly demonstrated a lack of adequate training, supervision, and discipline.

105.     Ahoskie was aware or through the exercise of reasonable care should have been aware that the conduct of some of its police personnel, including Mizelle, clearly demonstrated that they lacked the ability to responsibly discharge the duties of their office and that they should have been discharged to protect the citizenry.

106.     Ahoskie breached its duty when it failed to exercise reasonable care in its hiring, training, supervision, training, discipline and retention of members of its police force, including Mizelle, as described herein.

107.     The negligent hiring, training, supervision, training, discipline and retention described herein was a proximate cause of Plaintiff suffering damages in excess of Ten Thousand Dollars ($10,000.00), as described herein, in an exact amount to be established in trial.

## COUNT FIVE: WRONGFUL INTERFERENCE WITH CONTRACT
### (DEFENDANTS)

108.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

109.     Plaintiff was lawfully employed as a commercial truck driver.

110.     Mizelle knew that Plaintiff was employed as a commercial truck driver.

111.     Mizelle knew that Plaintiff required a CDL to maintain his employment.

112.     Mizelle knew that a DWI charge would automatically result in a one year suspension of Plaintiff's CDL.

113.     Mizelle knew that he could not lawfully charge Plaintiff with a DWI because he lacked reasonable suspicion for a lawful seizure.

114.     Mizelle intentionally and unlawfully charged Plaintiff with a DWI knowing that this would cause Plaintiff's employer to terminate his employment and would make any future employment as a commercial driver virtually impossible.

15

115.    Mizelle deliberately or with reckless disregard for their truth, made or submitted false statements and/or omissions that created a falsehood in judicial proceedings to determine reasonable suspicion and/or lawful probable cause and to determine guilt or innocence, and said statements and/or omissions were material or necessary to any finding of probable cause.

116.    Mizelle's conduct induced Plaintiff's employer to no longer employ Plaintiff.

117.    Mizelle's conduct was intentional, illegal, and improper.

118.    Mizelle acted without privilege or justification.

119.    But for Mizelle's conduct, Plaintiff would have continued his employment as a commercial driver.

120.    Mizelle's conduct actually and proximately caused Plaintiff to suffer damages.

121.    In the alternative to official capacity conduct, Mizelle's conduct was malicious, corrupt, or outside the scope of his employment.

### COUNT SIX: DIRECT CLAIMS UNDER NORTH CAROLINA'S CONSTITUTION
### (AHOSKIE)

122.    Plaintiff incorporates by reference and re-alleges the allegations in the preceding paragraphs as though fully set forth herein.

123.    In the alternative, plaintiff asserts direct claims under North Carolina's Constitution against Ahoskie for damages proximately caused by the violations of plaintiff's rights if it is determined that plaintiff otherwise has no adequate remedy at state law.

124.    At all times alleged herein, Mizelle acted under color of state law.

125.    The wrongful acts and omissions of Mizelle alleged herein were deliberate, unlawful, and in violation of the protections guaranteed by the North Carolina Constitution, including but not limited to, Article I, Sections 1, 19-21, and 35-36.  By way of example and not limitation, plaintiff was unlawfully and unconstitutionally seized, taken, and charged and prosecuted

16

without probable cause.

126.     Said violations of plaintiff's rights proximately caused plaintiff's injuries as alleged herein.

**FEDERAL CLAIMS**

**COUNT SEVEN:  42 U.S.C. § 1983 / FOURTH & FOURTEENTH AMENDMENTS:**
**UNLAWFUL SEIZURE AND INITIATION OF CRIMINAL PROCEEDINGS**
**(DEFENDANTS)**

127.     Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

128.     Mizelle deprived plaintiff of his Fourth Amendment right to be free from unreasonable seizures because plaintiff was seized without reasonable suspicion or probable cause.

129.     Mizelle deprived plaintiff of his Fourth Amendment right to be free from the initiation of and prosecution for unlawful criminal proceedings because the facts and circumstances within their knowledge at the time plaintiff was charged or prosecuted were not sufficient to warrant a reasonable person to believe that a crime had been committed by plaintiff; Mizelle initiated criminal proceedings against plaintiff without lawful probable cause; Mizelle deliberately or with reckless disregard for their truth, made or submitted false statements and/or omissions that created a falsehood in judicial proceedings to determine reasonable suspicion and/or lawful probable cause and to determine guilt or innocence, and said statements and/or omissions were material or necessary to any finding of probable cause; and the criminal proceedings terminated favorably to plaintiff.

130.     Mizelle acted under color of one or more statutes, ordinances, regulations, customs, and/or usages of the State of North Carolina and/or the City when he deprived plaintiff of said rights.

17

131.     Upon information and belief, Mizelle knew, as a reasonable police officer in his situation would know, that his conduct violated plaintiff's clearly established rights under the United States Constitution.

132.     Ahoskie ratified or condoned the conduct of Mizelle because it knew that the conduct of Mizelle violated plaintiff's right to be free from ongoing criminal proceedings that were not supported by lawful probable cause yet it did not discipline Mizelle for his conduct or stop him from supporting the continued prosecution of plaintiff in the criminal proceedings. Ahoskie's policies, procedures, practices and/or customs foreseeably resulted in the unlawful initiation of and continued prosecution for unlawful criminal proceedings, and it was foreseeable that this would likely result in the deprivation of constitutional rights of those whom they encountered, such as plaintiff.  This demonstrates a reckless disregard for the federally protected rights of the public, including plaintiff.

133.     Ahoskie's policies, procedures, practices, customs, and/or inadequate supervision foreseeably resulted in the unlawful conduct of Mizelle, and it was foreseeable that such conduct would likely result in the deprivation of constitutional rights of those whom Mizelle encountered, such as plaintiff.  Mizelle knew or should have known about the substandard training and/or field performance of Mizelle, but turned a blind eye to this danger.  This demonstrates a reckless disregard for the federally protected rights of the public, including plaintiff.

134.     The Defendants, jointly and/or severally, acted maliciously, willfully, wantonly, and in reckless disregard and/or acted with deliberate indifference to Plaintiff's constitutional rights.

135.     At all times complained of, plaintiff was a permanent resident of the United States, and further was a person in and subject to the jurisdiction of the United States.

136.     The said deprivations proximately caused injuries to plaintiff.

## DAMAGES

137. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

138. As a direct, consequent, and proximate result of the aforesaid acts and omissions of the Defendants, Plaintiff has been prevented from transacting his normal business, and has incurred pecuniary losses, including but not limited to loss of wages, out of pocket expenses, legal costs and attorneys' fees.

139. Wherefore, the Plaintiff is entitled to recover from the Defendants, jointly and severally, compensatory damages for said pecuniary losses, and inconvenience, mental anguish, pain and suffering, embarrassment, emotional distress, humiliation, anger, fright, loss of freedom, and other non-pecuniary losses in excess of Ten Thousand Dollars ($10,000.00) in an amount to be established at trial.

140. The conduct of Mizelle involved reckless or callous indifference to Plaintiff's federally protected rights or was motivated by evil intent.

141. Wherefore, the Plaintiff is entitled to recover from Mizelle punitive damages in excess of Ten Thousand Dollars ($10,000.00) in an amount to be established at trial.

142. Plaintiff also alleges that Mizelle, through his above-described actions and/or omissions, acted with malice and/or willful or wanton conduct.

143. The conduct of Mizelle entitles Plaintiff to punitive damages pursuant to N. C. Gen. Stat. § 1D-15. In that regard, Plaintiff seeks exemplary damages exceeding Ten Thousand Dollars ($10,000.00) in an amount to be established at trial which would punish Mizelle for his conduct and which would deter him and others involved in law enforcement in North Carolina from engaging in such conduct in the future.

## <u>P<small>RAYER FOR</small> R<small>ELIEF</small></u>

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully prays this Court for relief as follows:

1.     That the Plaintiff have and recovers of the Defendants, jointly and severally, compensatory damages as allowed by federal law, including pre-judgment and post-judgment interest;

2.     That the Plaintiff have and recovers of Defendant Mizelle punitive damages as allowed by federal law, including pre-judgment and post-judgment interest;

3.     That the Plaintiff have and recovers of the Defendants, jointly and severally, compensatory damages as allowed by North Carolina law, including pre-judgment and post-judgment interest;

4.     That the Plaintiff have and recovers of Mizelle punitive damages as allowed by North Carolina law, including pre-judgment and post-judgment interest;

5.     That the Court enter an Order declaring that the Defendants' conduct and practices complained of are unconstitutional;

6.     That the Court enter an Order enjoining the Defendants from continuing their unlawful conduct and practices; and

7.     That the Plaintiff have and recovers from the Defendants, jointly and severally, attorneys fees as provided by law;

8.     That the Plaintiff be granted a trial by jury on all issues so triable, except for any issues of law or fact relating to insurance as contemplated and required by N.C. Gen. Stat. § 160A-485(d);

9.     That the costs of this action be taxed against the Defendants, jointly and severally;

10.    That the Plaintiff be granted such other and further relief as this court may deem just and

proper.

This the 20th day of July, 2014.

**DOGGETT LAW OFFICES**

/s/ Eric L. Doggett
Eric L. Doggett
State Bar No. 39639
3737 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27612-5515
Telephone: (919) 782-2979
Facsimile: (919) 789-2796
E-Mail: Eric@DoggettLawOffices.com